UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

CROSSLINK-D, INC., a Delaware Corporation,

        Plaintiff,

v.                                    CASE NO. 07-0088

JOSEPH LARGEY,

        Defendant
_____/

**AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIM OF DEFENDANT, JOSEPH LARGEY**

Defendant, Joseph Largey, answers the plaintiff's verified complaint as follows:

1.    Denied.

2.    Denied.

3.    Admitted.

4.    Denied, in that Largey remains a director and the rightful CEO of CrossLink-D.

5.    Admitted that the company's main focus is the development and sales of hemostatic devices, that Cochrum developed the concept for the products, that at some point Cochrum held the intellectual property rights to the research, that Cochrum was involved in forming Ares Laboratories, LLC, and that Sueflohn and Cochrum were members of Ares. Defendant is without sufficient information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

6.    Admitted that Ares needed professional management, that Largey was identified as one of two potential candidates, that Ares negotiated and entered into an employment agreement with Largey that is dated November 1, 2004. Defendant is without sufficient

information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

7. Admitted that Largey entered into the Employment Agreement, the terms of which speak for themselves and, therefore, no answer is required. To the extent an answer is required, Defendant denies.

8. Admitted that Leberman incorporated CrossLink-D by filing a certificate of incorporation with the Delaware Secretary of State, that the intellectual property of Ares was transferred to CrossLink-D in exchange for stock in the company, and that the Largey Employment Agreement was assigned to CrossLink-D. Defendant is without sufficient information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

9. Admitted except as to the exact date of the Organizational Meeting.

10. Admitted that following the election of the directors Mr. Leberman resigned as incorporator, that the three directors, Cochrum, Sueflohn, and Largey approved a set of bylaws for the corporation, the language of which provided for only one director, that the three directors authorized the issuance of common stock in the manner set forth in the Organizational Meeting minutes, and that Largey was issued 200,000 shares of common stock, which represented 10% of the outstanding shares of the Company at the time. Defendant is without sufficient information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

11. Admitted that Largey, along with Cochrum, signed the stock certificate for 200,000 shares to be issued to Largey. The balance of the averment is denied.

12. Denied.

13. Admitted that in late May 2006, Cochrum presented Leberman with written consents executed by certain shareholders of the Company. The balance of the averment is denied.

14. Defendant is without sufficient information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

15. Admitted that Sueflohn maintained his support for retaining Largey in his positions as director and CEO. The balance of the averment is denied.

16. Admitted that Leberman wrote the June 1 Letter, the contents of which speak for themselves and, therefore, no answer is required. To the extent an answer is required, defendant denies.

17. Admitted that Leberman wrote letters dated June 2, 2006 and June 5, 2006, the contents of which speak for themselves and, therefore, no answer is required. To the extent an answer is required, defendant denies.

18. Admitted that at one time, a meeting of the board of directors had been scheduled for June 6, 2006. Admitted that Dr. Cochrum took the position on June 6 and 7 that he was the sole director of CrossLink-D, that on June 6 Cochrum agreed to meet with Largey and Sueflohn, that Mr. Leberman was present on June 6, that the purpose of the meeting on June 6 was to review Largey's vision for the company and to discuss the Company's pending application for FDA approval of its initial product, and that Douglas Evans was present at the June 6 meeting. Defendant is without sufficient information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

19. Admitted that on June 6, 2006, Largey gave a presentation on his vision for the Company and that Evans left the meeting. Defendant is without sufficient information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

20. Admitted that a meeting of the board took place on June 7, 2006, and that Cochrum left the meeting. Admitted that share certificates were signed by Largey and Sueflohn and that Sueflohn signed as assistant secretary. Defendant is without sufficient information or knowledge to form a belief as to the balance of the averment and, therefore, denies the same.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

## COUNT I
(Breach of Fiduciary Duties Against Mr. Largey)

26. Defendant incorporates and reasserts his responses to paragraphs 1-25 above.

27. This paragraph states a legal conclusion to which no reply is required.

28. Denied.

29. Denied.

30. Denied.

## COUNT II
(Invalidity of Stock Issued to Mr. Largey)

31. Defendant incorporates and reasserts his responses to paragraphs 1-30 above.

32. Denied.

33. This paragraph states a legal conclusion to which no reply is required.

34. Denied.

### COUNT III
(In The Alternative, 77,778 Shares of Common Stock Are Subject to Repurchase)

36. Defendant incorporates and reasserts his responses to paragraphs 1-35 above.

37. Denied.

38. Denied.

39. Denied.

### First Affirmative Defense

CrossLink-D is equitably estopped from denying the Valid Issuance of 200,000 shares to Largey.

### Second Affirmative Defense

Largey had authority to take action as a director at the June 2006 board meeting.

### Third Affirmative Defense

The Written Consents and all subsequent actions taken unilaterally by Kent Cochrum on behalf of CrossLink-D are void.

### AMENDED COUNTERCLAIM AND DEMAND FOR JURY TRIAL

Defendant/Counterclaimant, Joseph Largey ("Largey"), sues Plaintiff/Counterdefendant, CrossLink-D, Inc. ("CrossLink-D") and says:

1. This is a cause of action for declaratory and injunctive relief and for breach of contract and tort damages.

## THE PLAINTIFF

2. Largey, a Virginia resident, is a former Johnson & Johnson Marketing Executive with extensive experience in the development, marketing, sales and promotion of medical products. Largey is the rightful CEO and member of the board of directors of CrossLink-D and its predecessor company, ARES Laboratories, LLC ("ARES").

## THE DEFENDANT

3. Defendant, CrossLink-D, is a Delaware corporation. One of the founders of CrossLink-D, Dr. Kent Cochrum ("Cochrum"), conceptualized a new medical invention---a product with the potential to dramatically reduce blood loss by accelerating the body's own clotting process (the "Product").

4. At all times material, Cochrum was a founder, officer, and member of the board of directors of CrossLink-D.

## OPERATIVE EVENTS

5. Despite having worked for almost ten years on developing the Product and trying to develop a business plan to market it, by October 2004, Cochrum still had no patents, no registered trademarks, no FDA approvals, and no marketing plan. Without those, the Product was going nowhere. In October 2004, Cochrum approached Largey about becoming the CEO and member of the board of directors of ARES given his experience in the marketing of medical products.

6. In November 2004, ARES entered into an Employment Agreement with Largey under which Largey became the CEO and member of the board of directors of ARES. A copy of the Employment Agreement is attached as **Exhibit A**.

7. At all times material, the members of the board of directors of ARES were Largey, Cochrum, and Daniel Sueflohn (Cochrum's brother-in-law).

8. As part of the negotiations leading to the Employment Agreement, Cochrum had told Largey that he would only hire a CEO who would be willing to move to Jacksonville, Florida, where he intended to consolidate the company's operations.

9. In November 2004, Largey began his duties as CEO of ARES. In November 2004, ARES established an office for the management of all of its business-related activities in Tampa, Florida. Between November 2004 and May 2005, Largey managed all of ARES' business operations from the Tampa, Florida office.

10. At the outset of his employment with ARES, Largey communicated his business objectives and marketing plan for the company to Cochrum and Sueflohn, both of whom approved the plan. The business plan focused mainly on accomplishing key objectives. Its primary focus was on securing intellectual property (patents & trademarks) and gaining FDA approval for the Product, which would increase the value and marketability of both the Product and the company and thereby attract new investors willing to take the company to the next level. Other objectives included the creation of a comprehensive marketing video and registration of trademarks.

11. Under Largey's direction, within approximately one year from his hire, the company had met all of the milestones and objectives in its business plan.

12. In May 2005, ARES ceased its business operations and a newly created Delaware corporation called CrossLink-D was formed. The Original Bylaws of CrossLink-D are attached as **Exhibit B**.

13. CrossLink-D assumed ARES' obligations under the Employment Agreement, and beginning in May 2005, Largey became CrossLink-D's CEO and member of its board of directors. A copy of the Employment Contract Assignment is attached as **Exhibit C**.

14. As with ARES, the members of CrossLink-D's board of directors were Cochrum, Largey, and Sueflohn.

15. In May 2005, Largey was granted 200,000 shares of CrossLink-D. A copy of the share certificate is attached as **Exhibit D**. Cochrum, Sueflohn, and Largey all voted in May 2005 to issue Largey 200,000 shares of CrossLink-D. This issuance of shares to Largey was unrelated to the previous employee share incentive program that had been offered in Largey's employment agreement. All of the directors, and the company's corporate counsel, Robert Leberman, understood and acknowledged that prior to the issuance of the 200,000 shares of CrossLink-D stock to Largey that Largey had already paid adequate valid consideration for the shares by having already foregone significant salary and expense reimbursement, and all understood that the shares issued to Largey were fully paid.

16. Between May 2005 and May 2006, Largey managed all of CrossLink-D's business operations from CrossLink-D's office in Tampa, Florida.

17. In April 2006, pursuant to Cochrum's statements that the company would soon be consolidating its operations in Jacksonville, Largey began the process of trying to sell his home in Tampa and finding a home in and moving to Jacksonville.

18. Around this time, Largey informed Cochrum that he was in the process of moving his home from Tampa to Jacksonville and would be unavailable or difficult to reach around the time of his move.

**Cochrum and Evans Secretly Plan to Oust
<u>Largey as Director, Officer and Shareholder</u>**

19. Unbeknownst to Largey at the time, while Largey was in the process of selling his house in Tampa and moving to Jacksonville, Cochrum was engaging in secret discussions with a person named Douglas Evans. At a time when Cochrum had taken no action to oust Largey and Sueflohn as members of the board of CrossLink-D, Cochrum had reached a secret agreement to pay Evans, with company funds, a significant monthly fee and other compensation, including stock options and indemnification, in exchange for Evans' assistance in devising a scheme to oust Largey and Sueflohn as directors, terminating Largey as CEO, and divesting Largey of his shares in CrossLink-D. Cochrum never advised Sueflohn and Largey of this secret agreement to pay Evans with company money for his advice to oust them from the company.

**<u>Wrongful Actions to Oust Largey as a Director</u>**

20. Pursuant to the plan put in place by Evans and Cochrum, in May 2006, unbeknownst to Largey and Sueflohn, Cochrum and Evans prepared and sent documents to several shareholders of CrossLink-D entitled "Action by Majority Written Consent to Remove Director of CrossLink-D, Inc." (hereinafter referred to as the "Written Consents", attached as **Composite Exhibit E**). Several shareholders, including Cochrum, executed the "Written Consents" in an attempt to oust Largey and Sueflohn as directors of CrossLink-D.

21. After these shareholders signed the Written Consents, Cochrum sealed them in an envelope and gave them to CrossLink-D's corporate counsel, Bob Leberman, with an instruction not to open the envelope until the date of the next CrossLink-D board meeting in early June 2006.

22. At the June 2006 meeting of the board of directors, the Written Consents were revealed to Sueflohn and Largey, and Cochrum took the position that they constituted sufficient majority action by the shareholders of CrossLink-D to remove Largey and Sueflohn as directors.

23. Thereafter, Cochrum proclaimed himself the sole director of CrossLink-D and began to take unilateral action on behalf of CrossLink-D, including taking action to terminate Largey as CEO of CrossLink-D and divesting him of his shares in CrossLink-D.

24. Contrary to Cochrum's claim, the shareholders signing the "Written Consents" did not even constitute a simple majority of the shareholders entitled to vote. Months prior to the time Cochrum and the other shareholders executed the "Written Consents," CrossLink-D had already entered into a binding written agreement to issue a number of additional shares of CrossLink-D to a group of investors called "Silverback7" and had a current contractual obligation to do so. A copy of CrossLink-D's contract with Silverback7 is attached as **Exhibit F**. Taking the Silverback7 shares into account, the Written Consents did not constitute a vote by even a simple majority of the shares entitled to vote. However, in order to create an argument that a majority of the current shareholders had voted to remove Largey and Sueflohn, Cochrum wrongfully and intentionally prevented the shares from being issued to Silverback7.

25. In an e-mail to Silverback7, Cochrum admitted his illicit purpose in preventing issuance of the shares to Silverback7 was so that he could "reconstitute" the board.

26. CrossLink-D's corporate counsel, Leberman, advised Cochrum that the "Written Consents" were legally ineffective to remove Largey and Sueflohn as directors. Cochrum ignored this advice and instead unilaterally relieved Leberman of his position as corporate counsel.

27. As Leberman pointed out, the Written Consents were a nullity because they did not constitute sufficient majority action by the shareholders to remove Largey and Sueflohn because CrossLink-D had cumulative voting with respect to election of board members.

28. Despite the fact that Cochrum disseminated the Written Consents to shareholders to remove Largey and Sueflohn as directors, when Leberman opined that the Written Consents were ineffective to remove them as directors, Cochrum then took a nonsensical "fallback" position that he did not even need to remove Largey and Sueflohn as directors because they had never been directors in the first place. Cochrum referenced a provision in the bylaws of CrossLink-D that stated that there was only to be one director of CrossLink-D. This "fallback" position makes no sense as Sueflohn and Largey were clearly elected as directors of CrossLink-D in May 2005, and Cochrum, Sueflohn, and Largey had been operating and voting on matters collectively as CrossLink-D's board of directors since the company's inception in May 2005.

29. Following the Written Consents, Cochrum took the position that he was the sole director of CrossLink-D and then in late July 2006 unilaterally purported to call a "Special Meeting" of the shareholders of CrossLink-D to be held on August 1, 2006. Because Largey and Sueflohn were rightful members of the board of directors of CrossLink-D, Cochrum's actions in unilaterally calling for and noticing the "Special Meeting" were invalid and invalidated all of the actions taken at the Special Meeting. Further, the notice for the "Special Meeting" (**Exhibit G**) was deficient in that it gave inadequate advance notice of the meeting under the company's bylaws and failed to properly follow the procedures for the nomination of new directors. Neither Largey, Sueflohn, nor Silverback7 was given proper notice or opportunity to participate in the Special Meeting.

30. Paradoxically, Cochrum's stated purpose in calling for the "Special Meeting" was to remove "all" the directors of CrossLink-D and elect himself as the sole director of CrossLink-D. This is despite Cochrum's earlier pronouncements that the Written Consents had already effectively rendered him the sole director and removed Largey and Sueflohn, or alternatively, that Cochrum had always been the sole director and that Largey and Sueflohn had never even been directors.

31. At the unauthorized "Special Meeting" Cochrum called a vote of shareholders, which did not include the Silverback7 shareholders. Those shareholders present in person or by proxy purportedly voted to remove "all" of the directors of CrossLink-D and to elect Cochrum as the sole director of CrossLink-D.

### Wrongful Actions to Remove Largey as CEO

32. Despite the legal insufficiency of the Written Consents, Cochrum nevertheless began to take unilateral action on behalf of CrossLink-D. In accordance with the plan that Evans and Cochrum had put into place, sometime prior to August 2006, Cochrum retained Florida counsel who sent Largey a letter on behalf of CrossLink-D to inform him that he was being terminated as CEO "for cause." A copy of the Termination Letter is attached as **Exhibit H**.

33. Prior to the termination letter, neither Sueflohn, Cochrum, nor any other person acting on behalf of CrossLink-D had ever communicated to Largey that he had in any way breached his duties as CEO.

34. CrossLink-D failed to comply with the requirements of a "for cause" termination as outlined in Largey's Employment Agreement, and in fact, there was no valid reason to terminate Largey's employment. Cochrum's motivation to terminate Largey as CEO

was a product of his illicit plan to seize control of the company for himself through wrongful means in violation of his fiduciary duties to CrossLink-D, its shareholders and Largey.

### Wrongful Actions to Divest Largey of his Shares in CrossLink-D

35. With Cochrum's approval, in September 2006, Evans sent an e-mail to shareholders other than Largey stating that Largey no longer owned 200,000 shares of the company but only 122,222 shares. Evans declared in this e-mail that CrossLink-D had exercised a right to repurchase 77,778 shares and that it had the right to take away even more shares because, Evans wrongly claimed, Largey had given no value for the shares. A copy of the September 8, 2006, e-mail is attached as **Exhibit I**.

36. With Cochrum's approval, in July and August 2006, Evans sent correspondence to shareholders of CrossLink-D other than Largey, including Sueflohn, which contained false and defamatory statements about Largey to the other shareholders.

37. Evans and Cochrum also prevented CrossLink-D from sending shareholder information to Largey, including withholding (to this day) the tax forms Largey needs to complete his federal income tax returns.

38. Largey is entitled to and seeks indemnification from CrossLink-D, pursuant to the Bylaws of CrossLink-D, 8 Del. C., § 145 (2006), and other applicable law, including payment of his attorneys' fees and costs incurred in this and other legal matters involving CrossLink-D.

## COUNT I

### For Entry of a Declaration that Largey Owns 200,000 Shares of CrossLink-D

39. Plaintiff incorporates the allegations of paragraphs 1- 38 above.

13

40. There is presently a dispute between Largey and CrossLink-D as to Largey's entitlement to some or all of his shares of CrossLink-D.

41. In May 2005, Largey was granted 200,000 shares as a Founder of CrossLink-D, and a share certificate representing these shares were issued to Largey. CrossLink-D and Cochrum represented to Largey and to others that this share certificate was appropriately issued and fully paid. All three directors of CrossLink-D voted to issue Largey the 200,000 shares; officer and director, Cochrum, signed the share certificate issuing the shares to Largey, and CrossLink-D delivered the share certificate into Largey's possession.

42. In August 2006, after Cochrum proclaimed himself the sole director of CrossLink-D, Evans and he first began to take actions to attempt to divest Largey of some portion or all of his shares of CrossLink-D. This was done for the purpose of attempting to maintain for Cochrum sole control of CrossLink-D.

43. Relying on the terms of the Employment Agreement, Cochrum and Evans reported to shareholders other than Largey that Largey was not entitled to some portion or all of the shares he was granted in CrossLink-D because i) "the company has no record of…Mr. Largey…having paid for…" his shares, and ii) the company was entitled to repurchase "unvested shares." An e-mail sent by Evans to shareholders other than Largey outlining the plans and actions taken to divest Largey of his shares is attached as **Exhibit H**.

44. Contrary to the claim of CrossLink-D, the issuance of the 200,000 shares of CrossLink-D stock was not subject to the terms of the share repurchase provisions under the Employment Agreement.

45. Despite claiming a right to repurchase shares from Largey, CrossLink-D never paid Largey for the shares the defendants claim were repurchased.

14

46. The defendants' position that Largey gave no value for his shares is without merit. To get the company up and running, Largey agreed to waive a total of $250,000 of his base salary for the entire first two years of his employment. On top of that, Largey worked *without any compensation* for salary or expenses between his commencement date of November 1, 2004 and the end of May 2005. This amount totaled $107,088. In September 2005, the board of directors formally recognized the $107,088 salary and expenses foregone by Largey as a financial investment in the company.

47. CrossLink-D's share grant to Largey was made at the time of CrossLink-D's formation in consideration of his prior foregone salary and expenses, and no further payment was required of him for those shares. Largey has given value for his shares and disputes that he is required to pay any additional sums for the 200,000 shares he was granted in May 2005. Largey also disputes that CrossLink-D has any right to take any portion of his 200,000 shares, whether by repurchase or otherwise.

48. Largey is entitled to a declaration of the status of his ownership of the 200,000 shares he has been granted in CrossLink-D, the value of which exceeds $75,000, and his entitlement to a certain percentage of ownership of CrossLink-D.

WHEREFORE, Plaintiff, Joseph Largey, respectfully requests that this Court enter a Declaratory Judgment establishing that he alone owns the 200,000 shares of CrossLink-D that were granted to him in May 2005, that those shares are not subject to repurchase by CrossLink-D, and that those shares are not otherwise subject to be taken from Largey by CrossLink-D or anyone else for any reason. Largey requests that this Court permanently enjoin CrossLink-D and any of its employees, officers, directors or agents from taking action to divest Largey of his shares or percentage ownership in CrossLink-D. Largey further

requests that this Court order CrossLink-D to provide Largey all appropriate and necessary documentation and information so that Largey can complete his federal income tax returns.

## COUNT II

### Breach of Employment Agreement

49. Plaintiff incorporates the allegations of paragraphs 1- 38 above.

50. CrossLink-D and Largey are parties to the Employment Agreement attached as **Exhibit A**.

51. The Employment Agreement provides for both termination "for cause" and "without cause."

52. On August 4, 2006, CrossLink-D (under the illegitimate unilateral direction of Cochrum) sent notice to Largey of his termination "for cause."

53. The Employment Agreement defines "for cause" termination as follows:

> For purpose of this Agreement, termination for "Cause" will mean, in each case as determined in good faith by the Board after consultation with you to assess the validity of the basis for such termination, termination because of (A) your conviction of a felony, (B) your willful breach of fiduciary duty to ARES, or (C) your breach of this Agreement which continues or remains uncured after written notice from the Board, which shall include the completion or satisfaction of mutually established milestones or objectives, to be established by you and the Board during the first 90 days of employment and which may be amended from time to time by mutual agreement of you and the Board.

54. Defendant, CrossLink-D, has breached the Employment Agreement by, among other things, terminating Largey as CEO purportedly "for cause" without meeting the substantive or procedural requirements of a "for cause" termination.

55. As the proximate result of CrossLink-D's breach, Largey has been damaged in an amount in excess of $75,000.

56. All conditions precedent to this action have been met, have been waived, or have occurred.

WHEREFORE, Plaintiff, Joseph Largey, demands judgment against Defendant, CrossLink-D, for damages in excess of $75,000, plus pre-judgment interest, costs, and such other relief as the Court deems just and appropriate.

PHILLIPS, GOLDMAN & SPENCE, P.A.

JOHN C. PHILLIPS, JR., ESQUIRE (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200

and

VOLPE, BAJALIA, WICKES,
ROGERSON, & WACHS, P.A.
Timothy W. Volpe
Florida Bar No. 358185
Matthew P. McLauchlin
Florida Bar No. 484180
1301 Riverplace Boulevard
Suite 1700
Jacksonville, Florida 32207
(904) 355-1700 Telephone
(904) 355-1797 Facsimile
Attorneys for Plaintiff

DATE: March 14, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Peter B. Ladig, Esquire, The Bayard Firm, P.A., 222 Delaware Avenue, Suite 900, P.O. Box 25130, Wilmington, DE 19899 via electronic service this 15th day of March, 2007.

/s/John C. Phillips, Jr.
John C. Phillips, Jr., Esquire (#110)